**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-1423-MSK

**LEE KIRK WILLIAMS,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, acting Commissioner of Social Security,**

    Defendant.

---

**OPINION AND JUDGMENT REVERSING DISABILITY DETERMINATION**

---

**THIS MATTER** comes before the Court as an appeal from the Commissioner's Final Administrative Decision (the "Decision") determining that Mr. Williams was not disabled within the meaning of §§216(i) and 223 of the Social Security Act, as amended. The Court has carefully considered the record, the initial briefing, oral argument and additional briefing submitted by the parties.

**PROCEDURAL BACKGROUND**

Mr. Williams sought disability benefits under Title II of the Act[1] based on mental impairments - bipolar disorder, depression, anxiety, and insomnia – that rendered him unable to work as of March 23, 2009. The state agency denied his claim, and he requested a hearing before an Administrative Law Judge (ALJ). His first hearing was conducted in April 2011, after which an ALJ determined that Mr. Williams was not disabled. Mr. Williams appealed and the

---

[1] 42 U.S.C. §§ 401-433.

Appeals Council vacated the ALJ's decision and remanded the case for further proceedings in accordance with explicit instructions.[2]

A second hearing was conducted in April 2012 by the same ALJ. He again determined that Mr. Williams was not disabled. The Appeals Council declined review of the decision, making it the final decision of the Commissioner. Mr. Williams timely appealed to this Court, which exercises jurisdiction pursuant to 42 U.S.C. § 405(g).

## MATERIAL FACTS

When he filed his disability claim, Mr. Williams was 46 years old, had a college degree and had worked as a customer service representative, telephone solicitor, stock clerk, cleaner, protective signal operator, order clerk, sandwich maker, and caterer helper. He sought disability benefits because he could not work due to his mental illness.

Between 2005 and 2012, Mr. Williams was diagnosed as suffering from and treated for bipolar affective disorder, major depressive disorder, post-traumatic stress disorder, anxiety disorder, and a panic disorder. At various times, he was prescribed a variety of different medications including Seroquel, Zoloft, Trileptol, Alprazolam, and Xanax.

---

[2] Although neither party has addressed the remand order, its specificity is noteworthy, both because it directed the ALJ to obtain additional information and because the ALJ ultimately did not do so. It specified[#13-3 p. 25] :
 "Upon remand, the Administrative Law Judge will:
- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examination and existing medical evidence (20 CFR 404.1512-1513)  The additional evidence may include, if warranted and available, a consultative examination with psychological testing and medical source statements about what the claimant can still do despite the impairment.
- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520."

His subjective symptoms included anxiety, panic attacks, racing thoughts, auditory hallucinations, insomnia, paranoia, and difficulty with comprehension and concentration. In particular, he stated that he experienced panic, high anxiety, paranoia, feelings of doom, and terror, particularly around crowds. He also described being sensitive to noise and unable to tolerate environments that are too fast or too loud. In such environments, he stated that his system becomes overloaded, his brain "overheats," his thoughts race and he experiences adrenaline rushes which affect his ability to get along with others.

**Medical Treatment and Opinions by Treating Professionals**

Between 2005 and 2009, Mr. Williams was treated by psychotherapist Faith Donaldson, who focused upon his problems of self-confidence, anger, difficulties with interpersonal relationships, and sensory integration issues. In January 2011, Ms. Donaldson completed a "medical source statement of ability to do work-related activities (mental)" in which she expressed two opinions – a conclusory opinion that she could not see Mr. Williams as "being able to hold down a job of any kind," and a differentiated opinion assessing his functional limitations. She opined that Mr. Williams had:

- moderate limitation in his ability to interact appropriately with co-workers;
- marked limitation in his ability to interact appropriately with supervisors;
- marked limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting; and
- extreme limitation in his ability to interact appropriately with the public.

Beginning in 2006, Mr. Williams began treatment with Dr. Howard Weiss, M.D, a psychiatrist. Dr. Weiss offered two opinions. The first was written on his business letterhead and simply stated that Mr. Williams was under his care for mood instability and he was "unable to attain and maintain gainful employment due to severe depression." The second was issued in February 2011, when Dr. Weiss completed a "medical source statement of ability to do work-

3

related activities (mental)." He agreed with many areas of limitation noted by Ms. Donaldson and added several more. He opined that Mr. Williams had:

- moderate limitation in his ability to make judgments on work-related decisions;
- moderate limitation in his ability to interact appropriately with supervisors;
- marked limitation in his ability to understand, remember, and carry out complex instructions;
- marked limitation in his ability to interact appropriately with co-workers;
- marked limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting; and
- mild limitation in his ability to interact appropriately with the public

Beginning in 2010, Mr. Williams received treatment from various mental health professionals through the Jefferson Center for Mental Health. Professionals at the Jefferson Center, Dr. Barry Frieder, M.D., Dr. Thomas Kinney, Psy.D, Dr. John Martens M.D., and Malgorzata Gawron, APRN all offered medical opinions. Dr. Frieder expressed an opinion in his 2010 treatment notes that Mr. William's "level of irritability precludes his holding work long enough to sustain himself." Dr. Kinney completed a "medical source statement of ability to do work-related activities (mental)," in 2011 that reflects the same areas of limitation as those recognized by Ms. Donaldson and Dr. Weiss:

- moderate limitation his the ability to understand, remember, and carry out simple instructions;
- marked limitation in his ability to make judgments on work-related decisions;
- marked limitation in his ability to understand, remember, and carry out complex instructions;
- marked limitation in his ability to interact appropriately with the public, supervisors, and co-workers; and
- marked limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting

In early 2011, Dr. John Martens M.D. and Malgorzata Gawron, APRN jointly completed a "medical source statement of ability to do work-related activities (mental)," in which they opined that Mr. Williams suffered from bi-polar disorder and had:

- moderate limitation in his ability to make judgments on work-related decisions;

4

      • moderate limitation in his ability to understand and remember, and carry out complex instructions;
      • moderate limitation in his ability to interact appropriately with co-workers;
      • moderate limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting; and
      • marked limitation in his ability to interact appropriately with the public and with supervisors.

**Medical Opinions by Non-Treating Professionals**

The record also contains opinions of consultants, but these were submitted in 2009 and never supplemented.

Consulting psychologist Brett Valette Ph.D. examined and evaluated Mr. Williams at the request of the state agency in August 2009. Dr. Valette reviewed only records by Ms. Donaldson prior to examination. Dr. Valette diagnosed Mr. Williams as suffering from posttraumatic stress disorder (PTSD), bipolar II disorder, generalized anxiety disorder, and panic disorder, and assigned him a global assessment of functioning (GAF) score of 55-60, indicative of moderate symptoms.[3] He observed that Mr. Williams could handle his own money, that he was paying attention and that his mental status was good, but he expressed no opinion as to functional limitations.

MaryAnn Wharry, Psy.D. a state consulting psychologist, also reviewed Mr. Williams' medical records in 2009. She considered records of treatment by Ms. Donaldson, Dr. Weiss and the assessment of Dr. Valette. Dr. Wharry opined Mr. Williams suffered from a bipolar II Disorder, PTSD, and Generalized Anxiety and Panic disorders. She also opined that the records demonstrated "mild" restriction of activities of daily living, but "moderate" difficulties in

---

[3] A GAF of 51-60 indicates "[m]oderate symptoms (e. g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) (*DSM-IV-TR*), at 34.

maintaining social functioning.  She noted that a Mental Residual Functional Capacity Assessment was necessary.  In her report, she opined that Mr. Williams had only two limitations:

- Moderate limitation in the ability to interact appropriately with the general public
- Moderate limitation in the ability to accept instructions and responds appropriately to criticism from supervisors

She summarized that as of 2009, Mr. Williams was able to do "work of limited complexity, but which requires accuracy and attention to detail; can respond appropriately to supervision and coworkers but must have minimal to no interaction with the general public.  **Semi-Skilled Work, Can't Work w/ Public**" (emphasis in original).

## ISSUES PRESENTED

The Decision reflects the standard 5-step analytical process.  At issue, are the ALJ's analysis and findings at Steps 3 and 4.

At Step 3, the ALJ found that the severe impairments identified at Step 2 - "depressive disorder versus bipolar disorder; anxiety disorder; panic disorder; and posttraumatic stress disorder"[4] - did not meet or equal the severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ identified two Listings that could possibly apply – 12.04 and 12.06. With regard to these, he considered only "paragraph B and paragraph C" criteria that focus on the degree of restriction or impairment.  In determining that the degree of Mr. Williams impairment did not meet or equal the Listings, the ALJ relied solely upon Dr. Wharry's 2009 functional assessment.  There is no discussion of treatment records or medical opinions pertaining to 2010, 2011 or 2012.

At Step 4, the ALJ first determined that Mr. William's description of his symptoms was not credible.  Then, the ALJ rejected the functional assessment opinions of all treating providers

---

[4] It should be noted that the Step 2 findings were conclusory, without discussion as to what medical evidence was considered, credited or discredited.

6

as "unpersuasive" because they were premised, at least in part, upon Mr. Williams' description of his symptoms.  In addition, the ALJ rejected the opinions of Dr. John Martens M.D., Malgorzata Gawron, APRN and Ms. Donaldson as not "not acceptable".  The opinons of Ms. Donaldson and Ms. Gawron were rejected because they were  not  acceptable medical sources.  Dr. Martens's opinion was rejected because he was not a  "treating source."

Ultimately, in reliance upon Dr. Wharry's 2009 record review opinion, which he found consistent with Dr. Valette's 2009 consulting examination opinion and "other objective medical evidence,"  the ALJ determined that Mr. Williams was: 1) unable to perform rapid production-rate physical work, such as rapid assembly-line work, work requiring hyper-vigilance, work involving safety operations, or work involving responsibility for the safety of others; and 2) that he should have no direct exposure in the workplace to alcohol, marijuana, illegal drugs, or the prescription drug Xanax.  Subject to these limitations, the ALJ found that Mr. Williams could perform semi-skilled work, with workplace noise at a moderate level, with frequent interaction with coworkers and the public. Based on this RFC determination, the ALJ found that Mr. Williams could perform his past relevant work as a customer service representative, telephone solicitor, stock clerk, cleaner, order clerk, and sandwich maker, and therefore was not disabled.

Mr. Williams challenges the Decision in several respects: 1) at Step 3, he argues that the ALJ failed to properly evaluate Mr. Williams' mental impairments in accordance with the Listings; 2) at Step 4, he argues that the ALJ erred in evaluating the medical evidence in determining Mr. Williams' RFC; and 3) also at Step 4, he argues that the RFC finding is not supported by substantial evidence because the ALJ failed to properly evaluate Mr. Williams' credibility.

**STANDARD OF REVIEW**

This Court is not free to reweigh the evidence nor substitute its judgment for that of the Commissioner. Rather, the Court carefully reviews the record and the Decision to determine "whether the correct legal standards were applied and whether the decision is supported by substantial evidence." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *see Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006); *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). If the Decision fails to reflect application of the correct legal standard, it must be reversed. *Washington v. Shalala*, 37 F.3d 1437, 1439-40 (10th Cir. 1994). Similarly, if a factual finding is not supported by substantial evidence, it must be reversed. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

**ANALYSIS**

**I.    Step 3 Challenge**

The Court begins with Mr. Williams' challenge at Step 3. Mr. Williams contends that the ALJ filed to "evaluate properly Mr. Williams' mental impairments". In his brief, he offers 13 pages of entries drawn from his medical treatment records from 2006-2012, which he contends generally would demonstrate satisfaction of the Listing requirements at 12.04 or 12.06. However, there is no specific argument that explains how the medical records show that Mr. Williams' impairment meets or equals the Listings. Alternatively, Mr. Williams argues that the ALJ should have employed a medical expert to opine as to whether the combination of Mr. Williams' severe impairments would equal a Listing. The Commissioner responds in conclusory fashion that "substantial evidence" supports the ALJ's findings.

The arguments of both parties miss the mark.  A claimant bears the burden of establishing that an impairment matches a Listing.  *Bernal v. Bowen*, 851 F2d 297, 300 (10th Cir 1988).  Mr. Williams' chronology of medical treatment records is not helpful in this regard because the Court is not free to assess the medical records to make factual findings.

The Commissioner's argument is also unhelpful. Saying that the finding is supported by substantial evidence doesn't address whether the ALJ applied the correct legal standard or sufficiently articulated consideration of appropriate factors and evidence.   At Step 3, an ALJ must discuss uncontroverted evidence not relied upon as well as significant probative evidence that is rejected.  *Clifton v. Chater,* 79 F3d 1007 (10th Cir 1996).  Failure to do this deprives this Court of the ability to engage in meaningful review.  An inadequacy of articulation, however, does not necessarily require reversal if there are "confirmed or unchallenged findings made elsewhere in the ALJ's decision" that confirm the step three determination.  *Fischer-Ross v. Barnhart*, 431 F3d 729 (10th Cir 2005).

The Court finds that the Decision's articulation at Step 3 is deficient.  The Decision does not identify any uncontroverted evidence or significant probative evidence that was rejected. The only medical evidence considered in determining whether the "Paragraph B and C criteria" of Listings 12.04 and 12.06 were satisfied is Dr. Wharry's 2009 record review opinion.  Consistent with *Fischer-Ross*, the Court will consider whether the requisite articulation is apparent elsewhere in the Decision.

However, even if a fuller explanation of the evidence appears elsewhere, the Step 3 findings are not supported by substantial evidence. This is because the time period for consideration of Mr. Williams' impairments begins in April 2009 and extends through April 2012, but the evidence upon which the ALJ relies is limited to Dr. Wharry's opinion in 2009.

There is no consideration of evidence of Mr. Williams' condition in 2010, 2011 or 2012. As a consequence, the Step 3 findings are not supported by substantial evidence, requiring reversal.[5]

## II. Step 4 Challenges

With regard to the ALJ's Step 4 RFC determination, Mr. Williams frames two intertwined objections. He contends that the ALJ failed to apply the correct legal standard in assessing medical evidence and in formulation of his RFC. In particular, he argues that the ALJ improperly substituted his credibility assessment for the proper legal standards. The Commissioner does not address the question of legal error, responding only that the credibility determination and the resulting RFC was supported by substantial evidence.

### A. Observations

The Court pauses here to note the significance of the issue that Mr. Williams raises. The heart of his challenge is that rather than evaluating medical opinions based on established legal standards, the ALJ first decided whether Mr. Williams was believable and then let that perception drive the outcome of the matter. This is a serious and significant challenge, one that the Commissioner never directly addresses despite the Court bringing it to counsels' attention and providing the opportunity for supplemental briefing.

This is a serious and significant matter [6] because it calls the integrity of the Social Security Disability claim review process into question. It is axiomatic that the determination of Social Security disability claims is an administrative process created and limited by statute, regulation, Social Security Rulings, POMS, and the like. When a Claimant opts for a hearing

---

[5] It would appear that this problem could have been avoided had the ALJ complied with the Remand Order by the Appeals Council.

[6] Because this case presents such a stark example of the problem, at the hearing for oral argument, the Court invited further briefing. Both parties submitted supplemental briefs. Mr. Williams identified pertinent Tenth Circuit case-law, as well as several unreported District Court decisions that illustrate the same problem as observed here. The Commissioner argued, as it had before, that the ALJ's credibility assessment was supported by the record. The Commissioner did not address the fundamental legal issue of whether an ALJ can reject medical opinions based upon the ALJ's assessment of the credibility of a claimant's symptom description.

before an ALJ, the hearing process is intended to be non-adversarial.  The job of the ALJ is to ensure that an adequate record is developed and that the appropriate legal standards are applied. *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). If an ALJ can bypass the legal standards to substitute his/her personal belief as to a claimant's entitlement to benefits, then the disability determination is matter of personal discretion and law does not rule.  Such situation undermines public confidence in the fairness and predictability of the process.

It is also serious and significant, because there is no recognition by the Commissioner of the problem.  The Commissioner's repeated response to challenges of legal or procedural error is that the decision/finding is supported by "substantial evidence".  This reflects a fundamental confusion between factual findings and legal conclusions.  The "substantial evidence" standard is a measurement of the proof necessary to support factual findings; it does act as a substitute for proper application of the law.  In essence, the Commissioner is saying that if the outcome is acceptable, then it does not matter what process or law is used to produce it, a proposition this Court fundamentally rejects.

Finally, this issue is serious and significant because it describes a problem that occurs all too frequently.  In this Court's experience with hundreds of Social Security Appeals, the "credibility assessment of the claimant" (as compared to the credibility of the claimant's statements) is increasingly used as a substitute for application of the proper legal standards, and the Commissioner defends the decision by arguing that  it is supported by "substantial evidence".

### B.  The ALJ's Step 4 Reasoning

In this Decision, the ALJ rejected the medical opinions of all treating and examining medical sources for a singular reason – they were "unpersuasive." By this, the ALJ meant that he did not believe Mr. Williams' description of his symptoms, and therefore he rejected all opinions by treating sources that consonant with that description because they necessarily were based on Mr. William's own incredible complaints. The ALJ explained:

> Overall, it appears from a review of the medical records that all of these treating sources accepted at face value the statements made and symptoms reported by the claimant. Indeed, there is nothing in the medical treatment records to suggest otherwise. For example, there is nothing the medical treatment records to suggest that any treating source conducted any type of validity testing. Nor is there anything in the medical records to suggest that during treatment, any treating source considered whether or not the claimant's subjective symptoms or self-reporting were motivated in whole or in part by primary or secondary gain. Moreover, the medical treatment records and the report of the consultative exam discussed above do not document inability to interact appropriately with treating sources or any significant deficits in concentration
>
> When a person provides information to a health care professional in the context of counseling or treatment, that information is typically described as the "patient history." Thus, in a medical context, a "patient history" is simply a specific type of self- reporting. In the context of health care, a patient's "history" plays an important role in diagnosis, treatment, and prognosis. Because of the important role it plays in health care, a patient's "history" must be accurate and reliable. It is similarly self-evident that an accurate and reliable patient history is essential to a correct diagnosis; to an appropriate mode of treatment; and finally, to a reasoned prognosis.
>
> It is similarly self-evident that in order for a patient's history to be reliable, the information provided by the patient must be fully credible. It follows, then that fully credible self-reporting by a patient is an essential element to both diagnosis and prognosis. Finally it follows that in a medico-legal setting such as this disability claim, fully credible self-reporting by a patient is an essential element [sic] a correct diagnosis of physical and /or mental impairment and a reliable assessment of functional limitation and/or ability to work.
>
> In this case, treating sources have given opinions not only about the claimant's diagnosis and prognosis, but also about the claimant's ability to work. The credit to be given these opinions, especially regarding functional impairment and ability to work, depend in large part on the credit to be given the patient's history. However, in this case I have found (as I explain elsewhere in the this decision) that the allegations of the claimant are not fully credible. . . . Thus, in this case, I am unable to give any significant weight to the treating source opinions regarding functional impairment or ability to work, because an essential element of the treating source assessments has been undermined. . . . More specifically, I

12

>give little to no weight to these opinions, which overstate the claimant's limitations. [13-2 pp. 37-38]

In addition to finding their opinions "unpersuasive," the ALJ rejected the opinion of Dr. John Martens M.D. because the ALJ could find no treatment records evidencing his treatment and rejected the opinion of Malgorzata Gawron, APRN because she was not an accepted medical source.

### C. The ALJ erred as a matter of law by failing to apply the correct legal standards to the opinions of treating medical sources

In determination of disability claims, the existence and the extent of an impairment is determined by considering evidence of "Signs" and "Symptoms." 20 C.F.R. § 404.1508. "Signs" are objective medically recognized facts that can be described, evaluated, and documented using acceptable clinical, diagnostic or laboratory techniques. 20 C.F.R. § 404.1528(b). Medical facts are reported in tests, treatment notes, and serve as the basis of medical opinions as to diagnosis, prognosis and functional capability and limitation. For example, results of a blood test may indicate diabetes or clinical observation may show signs muscle strain.

In the psychiatric/psychological context there may be no laboratory or test result that measure mental disease. Thus, with regard to psychological or mental impairments, medical signs are demonstrable phenomena indicating psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception. 20 CFR § 404.1528(b). Observations of medical signs by clinicians constitute medical data, and to the extent that an opinion with regard to psychological or mental impairments rests on clinically-observed signs and reported symptoms, the opinion are treated as any other medical opinion. 20

CFR Subpart P, App 1 §12.00(B); *Robinson v. Barnhart*, 366 F3d 1078, 1083 (10th Cir 2004); *Washington v. Shalala*, 37 F3d 1437, 1441 (10th Cir. 1994).

"Symptoms," in contrast, are observations or descriptions made by a claimant with regard to an impairment or how the impairment affects him or her. 20 CFR Part 404, Subpart P, Appendix 1, §12.00 B; 20 C.F.R. § 404.1528(a). By definition, symptoms are subjective and most often cannot be measured or tested. They often include pain, fatigue, weakness, nervousness and the like.

Not surprisingly, "signs" and "symptoms" are evaluated using different frameworks. A medical provider's evaluation of facts and opinions with regard to diagnosis, prognosis, and functional capability is given a great deal of deference.[7] The ALJ may not substitute his/her personal expertise or opinion for that of the medical professional, speculate as to medical or other facts, or consider the credibility of statements made by the claimant as to subjective symptoms. *McGoffin v. Barnhart*, 288 F2d 1248, 12 52 (10th Cir. 2002) (citing to *Morales v. Apfel*, 225 F3d 310, 317-18 (3d Cir. 2000). When medical professionals offer conflicting opinions, the ALJ can: (i) supplement the record by obtaining further medical evidence and opinions; or (ii) weigh the evidence and opinions, in accordance with a hierarchy of deference, generally giving more weight to medical opinions from treating sources than to those from non-treating sources. *Drapeau v. Massanari, 255 F3d 1211 (*10th Cir. 2001*); Frey v. Bowen* 816 F2d 508, 513 (10th Cir 1987); *Turner v. Heckler*,754 F2d 326, 329 (10th Cir 1985). Indeed, opinions of treating sources must be given controlling weight unless: (i) the opinion is not supported by clinical and laboratory diagnostic techniques; or (ii) is inconsistent with other substantial

---

[7] One exception is when a legal opinion is offered by a medical professional. When a medical professional states that a claimant is "disabled," this is a legal determination a legal determination reserved to the Commissioner. 20 CFR 404.1527(e)(2); 416.927(e)(2) *Castellano v. Secretary of Health and Human Services*, 26 F3d 1027,1029 (10th Cir. 1994).

evidence in the record. 20 CFR § 404.1527(a)(2) and 416.927(a)(2).  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating physician's opinion does not control,  like all medical opinions, it must be must be weighed in accordance with the factors specified in 20 CFR 404.1527.[8]  SSR 96-2p   Such factors must also be used to evaluate the opinions of providers who do not qualify as accepted medical sources.  *See Bonnell v. Astrue*, 650 F.Supp.2d 948, 958-59 (D.Neb. 2009).

As  noted,  a claimant's credibility cannot be considered in assessing medical evidence.  A claimant's credibility is pertinent only as to statements about his or her symptoms, and then only to assess the intensity, persistence and functional limitations of such symptoms. 20 CFR § 404.1529 and 416.929.  The credibility determination is not a free-form judgment of whether the claimant is truthful in general, but instead requires a structured consideration of the relationship between the objective medical facts and the subjective symptoms:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptoms and its functional effects.

SSR 96-7p. [9]

---

[8]     Those factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

[9]     In the Tenth Circuit this is often referred to as the *Luna* test. *Luna v. Bowen*, 834 F2d 161, 162-66 (10th Cir.1987). Under *Luna*, there are three determinations: 1) whether claimant has a pain-producing impairment established by objective medical evidence; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all of the evidence, both objective and subjective, claimant's pain is disabling. Later *Kepler v. Chater* 68 F3d 387, 391 (10th Cir. 1995), instructed

There is no basis for the ALJ to make an assessment of subjective symptoms (or the credibility of the claimant's statements) before concluding that a medically determinable impairment that could cause the symptoms exists. This requires the ALJ to first evaluate the medical evidence to determine what impairments exist.[10] Then the ALJ must identify the subjective symptoms and correlate them to the impairment. Only if the symptoms are related to the impairment is a credibility assessment of a claimant's statements made, and the significance of such assessment is limited to consideration of the intensity, severity and limitations in the claimant's ability to work

Limitation in the role of credibility assessment is applicable to mental impairments and to physical impairments that are hard to document with objective medical evidence. In *Valdez v. Barnhart*, 63 Fed. Appx. 838 (10th Cir. 2003) (unpublished), the Tenth Circuit considered facts similar to those presented here. The ALJ rejected opinions of treating physicians with regard to the claimant's mental impairments based on an assessment of the credibility of the claimant's symptom description. The Court reversed the Commissioner's decision to deny benefits, finding that that the ALJ erred in applying the correct legal standard. The Court observed:

---

that findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints not credible. Then *Qualls v. Apfel*, 206 F3d 1368, 1372 (10th Cir 2000), instructed that there need not be a formalistic recitation of the evidence in light of *Luna*, so long as the ALJ sets forth the specific evidence considered in the credibility assessment.

[10]     It is important to note that the determination at Step 2 (severe impairment) may not be sufficient to satisfy the first prong of this analysis. At Step 4, the ALJ must consider both severe and non-severe impairments in determining their effect on the Claimant's RFC. Thus, before discussing the credibility of Claimant's statements as to subjective symptoms, the ALJ must identify all of the impairments under consideration. For example, depression may be a severe impairment identified at Step 2. In assessing the Claimant's subjective complaints of leg pain, the ALJ must also consider the non-severe impairment of a prior leg fracture to determine whether it might give rise to continuing leg pain.

> The ALJ rejected Dr. Schmidt's opinion, stating that it was based on plaintiff's complaints, which the ALJ found were not credible. This approach impermissibly put the ALJ in the position of judging a medical professional on how he should assess medical data—plaintiff's complaints. An ALJ may not substitute his lay opinion for a medical opinion..

62 Fed. Appx. at 842. *See also Sisco v. United States Dep't of Health & Human Servs.*, 10 F 3d 739, 744 (10th Cir 1993) (chronic fatigue syndrome); *McGoffin v. Barnhart*, 288 F2d 1248, 12 52 (10th Cir. 2002) (mental impairment); *Thomas v. Barnhart*, 147 Fed. App. 755, 759-60 (10th Cir 2005) (mental impairment); *Ryan v. Commissioner of Social Security*, 528 F3d 1194 (9th Cir 2008)(mental impairment); *Sanchez v. Astrue* 08-cv-560 REB (D. Colo. 12/20/2009); Trichak v. Colvin, No 13-cv-374WYD (D. Colo. 7/14/2014).

Here, the ALJ erred in application of several legal standards. He improperly considered credibility of the claimant's statements in assessing the opinions of treating sources: Ms. Donaldson, Drs. Weiss, Frieder, Kinney, and Martens and Ms. Gawron, APRN. In addition, he failed to utilize the appropriate legal test to evaluate the credibility of Mr. Williams' statements about his subjective symptoms and to limit application of such credibility determinations as required by law.

In addition, although the ALJ was correct that Ms. Donaldson, as a psychotherapist (but not a psychologist) and Ms. Gawron, as a nurse, are not treated as an accepted medical sources. (20 CFR 404.1513(a)), he erred in rejecting their opinions on that basis. He was required to evaluate their opinions in accordance with the factors contained in 20 CFR § 404.1527, which he ALJ did not do.

The ALJ erred as a matter of law in his rejection of Dr. Marten's opinion on the grounds that "he is not a treating source." The record reflects that Ms. Gawron and Dr. Marten signed a "medical source statement of ability to do work-related activities (mental)" in early 2011 and it

is undisputed that both were employed by the Jefferson Center for Mental Health who treated Mr. Williams. But if the ALJ had doubts about Dr. Marten's role in Mr. Williams' treatment, he could have requested additional information or treated it as a non-accepted medical source. Absent a showing that Dr. Marten knew nothing about Mr. Williams, the ALJ should not have rejected the opinion.

### D. The RFC Determination is not supported by substantial evidence

Assuming, for purposes of argument, that there was no error in application of appropriate legal standards, the RFC is still not supported by substantial evidence for two reasons. As noted, the ALJ gave no weight to the functional capacity opinion of any treating provider based on his credibility assessment of the claimant. He gave significant weight, however, to Dr. Wharry's 2009 opinion that Mr. Williams could perform semi-skilled work, which he found to be consistent with Dr. Valette's opinion and with "other objective medical evidence of record".

Unfortunately, Dr. Wharry's opinion and Dr. Valette's opinion suffer from the same flaw that the ALJ ascribes to the opinions of the treating sources – that is, they are based on Mr. Williams' statements as to his subjective symptoms. With regard to Dr. Wharry, her opinion is derived in its entirety from Mr. Williams' medical records as of 2009, which are necessarily infected by perceptions of his treating professionals based on his recitation of his symptoms. Dr. Valette's opinion is also a product of (and indeed recites) Mr. Williams' description of his symptoms. Thus, using the ALJ's logic, because all treatment and assessment depends on Mr. Williams' description of his symptoms, no medical opinion constitutes substantial evidence upon which an RFC can be based. The Court recognizes that this extends the logic employed by the ALJ to the absurd, but in doing so hopes to emphasize why credibility assessments have no place in evaluation of medical opinions.

In addition, as noted with regard to the error at Step 3, the only evidence that the ALJ considers relative to Mr. Williams's functional capacity is dated to 2009. Both Dr. Wharry's and Dr. Valette's opinions were rendered in 2009. Neither were updated, nor did the ALJ obtain more current medical information in accordance with the Remand Order. The only reference to Mr. Williams' functional capabilities during the time period 2010 through 2012, is a conclusory statement that Dr. Wharry's opinion is consistent with "other objective medical evidence of record." This reference is too general for this Court to review. Furthermore, in light of the ALJ's rejection of all other medical evidence, it is hard to imagine to what objective evidence the ALJ is referring.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** the determination of the Commissioner, and **REMANDS** this matter for consideration in accordance with the findings and conclusions herein. However, upon remand this matter shall be assigned to Administrative Law Judge other than the one who conducted both prior hearings on Mr. Williams' claim.

Dated this 17th day of February, 2015.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge